Florence **SLOAN** et al., Plaintiffs,

v.

The **UNITED STATES DEPARTMENT OF AGRICULTURE** et al., Defendants.

No. 209–71C2.

United States District Court, W. D. Washington.

Dec. 6, 1971.

Ronald F. Pollack, Center on Social Welfare Policy and Law, New York City, Donald E. Clocksin, Seattle, Wash., for plaintiffs.

Stan Pitkin, U. S. Atty., Albert E. Stephan, Asst. U. S. Atty., Seattle, Wash., John A. Harris, Deputy Director, Commodity Stabilization Division, Theodore W. Wrobleski, Atty., Commodity Stabilization Division, U. S. Department of Agriculture, Washington, D. C., for defendants.

BEEKS, District Judge.

Plaintiffs filed this action to compel the Secretary of Agriculture (Secretary) to allow concurrent operation of the Commodity Distribution Program with the Food Stamp Program in King, Pierce and Snohomish Counties in the State of Washington. Plaintiffs allege that, although they qualify for food stamps, their incomes are so low that they cannot afford them.[1] This matter came before the Court on plaintiffs' motion for a preliminary injunction, but because of the urgency of the situation the parties have agreed to submit the matter on the merits for final disposition.

Prior to January 11, 1971, the Food Stamp and Commodity Distribution Programs could be administered in the same area only "during emergency situations caused by a natural or other disaster as determined by the Secretary."[2]

The provision quoted was, however, recently amended to read as follows:[3]

(b) *In areas where the food stamp program is in operation, there shall be no distribution of federally donated foods to households under the authority of any other law except that distribution thereunder may be made:* (1) during temporary emergency situations when the Secretary determines that commercial channels of food distribution have been disrupted; (2) for such period of time as the Secretary determines necessary, to effect an orderly transition in an area in which the distribution of federally donated foods to households is being replaced by a food stamp program; or (3) *on request of the State agency:* Provided, That the Secretary shall not approve any plan established under this Act which permits any household to simultaneously participate in both the food stamp program and the distribution of federally donated foods under this clause (3).

While the State of Washington is not a party hereto, the state agency which would administer the commodity distribution program stands ready and willing to put it into operation.[4] A request

---

1. Affidavits of plaintiffs Sloan, Waldman, Smith, and Evans.

2. P.L. 88–525; 78 Stat. 703 (1964).

3. P.L. 91–671 § 3 (1971), amending 7 U.S.C. § 2013(b) (emphasis added). The applicable regulation is 7 C.F.R. § 271.1 (a), recently amended by 36 F.R. 14104:
§ *271.1 General Terms and conditions for State agencies.*
(a) *Federally donated foods.* In areas where the program is in operation, there shall be no distribution of federally donated foods to households, except that such distribution may be made:
(1) During temporary emergency when FNS determines that commercial channels of food distribution have been disrupted:
(2) For such period of time as FNS determines, not to exceed 3 months, upon request of a State agency and submission of facts by such State agencies showing that the continued distribution of such donated foods is necessary in order to effect an orderly transition in an area in which the distribution of federally donated foods to households is being replaced by the program; or
(3) On request of the State agency: *Provided,* That:
(i) No Department funds are used in carrying out the State agency's administrative responsibilities in the handling and issuing of federally donated foods: [*sic*]
(ii) Certification of all households is made by the State agency in conformity with the requirements of this subchapter; and
(iii) Controls are established which will prevent any household from participating in the program and also simultaneously receiving household distribution of federally donated foods.

4. Affidavits of Mary Lou Everson dated November 18 and 22, 1971.

by this agency to so do was tendered to, and rejected by, the Department of Agriculture (DOA).[5] Defendant Charles M. Ernst (Ernst), Western Regional Director of DOA's Food and Nutritional Service, has stated that, although "regulations issued to implement [the new legislation] do spell out requirements for dual operation, the Department has decided that it will not approve any dual operations."[6] Ernst was of the opinion that "dual operation of Food Distribution and the Food Stamp Program in the same locality cannot be justified."[7]

Similarly, defendant Richard Lyng (Lyng), the Assistant Secretary of DOA who has authority for the administration of DOA's food distribution programs, has said that "the Department envisions no expansion of the Supplemental Food Program now in operation in Seattle. . . . [W]e do not plan to approve any dual operations of the Food Distribution and Food Stamp Programs in any area."[8] These statements are in conflict with testimony of Lyng before a hearing of the Senate Select Committee on Nutrition and Human Needs on September 23, 1971.[9] The administrative actions of DOA, however, indicate that DOA plans to approve no dual operations in any metropolitan area. Indeed, the Secretary was shown the State's plan for commodity distribution,

but apparently believed that his department had no duty to study it.[10]

The statute provides that dual operation cannot be undertaken in the same area "except that distribution . . . may be made . . . on request of the State agency . . . " as long as no one household may qualify for both programs at the same time.[11] States which institute dual operation of the programs must pay the full cost of handling and issuing the commodities.[12] The statute is ambiguous as to who "may" make the distribution. Plaintiffs contend that the Secretary has no discretion in the matter, that after a request of the proper state agency the Secretary must approve every request, provided that no household shall participate simultaneously in both programs.

This Court disagrees. Plaintiffs would make the statute read " . . . that distribution . . . may be made *by the State in its sole discretion* . . . (3) on request of the State agency . . .."[13] If the state were given complete discretion whether to initiate a commodity distribution program in the same area where food stamps were being issued, the state would not have to make any request at all. The correct interpretation is that the Secretary has discretion to authorize dual operation upon request of the state agency.

---

5. *Id.* A copy of the plan is attached to the affidavit of November 18.

6. Letter addressed to Mary Lou Everson dated August 5, 1971, and attached to her affidavit of November 18, 1971.

7. *Id.*

8. Letter from Assistant Secretary Richard Lyng, addressed to Hon. Warren G. Magnuson, United States Senator, dated July 22, 1971, and attached to Senator Magnuson's affidavit of November 18, 1971. A similar statement was made by the Assistant Secretary in a letter addressed to Hon. Daniel J. Evans, Governor of Washington State, also dated July 22, 1971 and attached to Mary Lou Everson's affidavit of November 18, 1971.

9. Statement by Assistant Secretary Lyng before the Senate Select Committee on

Nutrition and Human Needs, September 23, 1971, at p. 384 of the transcript:
"We will be perfectly willing to permit simultaneous distribution of these commodities and food stamps wherever there seems to be to us a practical, sensible reason for so doing. But we don't think that situation exists or a good case has been made for it in the one application that we have had so far."

10. Affidavits of Mary Lou Everson dated November 18 and 22, 1971.

11. P.L. 91–671, § 3 (1971).

12. 7 C.F.R. § 271.1(a), as amended at 36 F.R. 14104, quoted *supra* note 3.

13. P.L. 91–671 § 3 (1971) (italics added).

This analysis is supported further by a reading of the sections authorizing distribution of commodities. Under section 2013(b) of the Food Stamp Act, as amended, distribution must be "under the authority of . . . other law . . .." The "other law" in this case would be 7 U.S.C. §§ 612c and 1431. The first of these sections authorizes the acquisition of commodities to

> encourage the domestic consumption of [them] . . . by increasing their utilization through . . . donations . . . among persons in low income groups as determined by the Secretary of Agriculture . . . [14]

The second section provides that

> . . . the Commodity Credit Corporation is authorized, on such terms and under such regulations as the Secretary of Agriculture may deem in the public interest . . . (3) in the case of food commodities to donate such commodities . . . to such State . . . agencies as may be . . . approved by the Secretary, for use in the United States . . . in the assistance of needy persons. . . . [15]

Clearly the Secretary has discretion to authorize dual operation in a case such as this: where the state is operating under the Food Stamp Program, requests institution of the Commodity Distribution Program in the same areas, and submits a plan for such distribution.[16]

However, discretionary power may be abused. The discretion of the Secretary must be reasonably exercised in light of the intent of Congress in enacting the Food Stamp Act and its amendments:[17]

> It is hereby declared to be the policy of Congress, in order to promote the general welfare, that the Nation's abundance of food should be utilized cooperatively by the States, the Federal Government, local governmental units, and other agencies to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households. The Congress hereby finds that the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households. The Congress further finds that increased utilization of food in establishing and maintaining adequate national levels of nutrition will promote the distribution in a beneficial manner of our agricultural abundances and will strengthen our agricultural economy, as well as result in more orderly marketing and distribution of food. To alleviate such hunger and malnutrition, a food stamp program is herein authorized which will permit low-income households to purchase a nutritionally adequate diet through normal channels of trade.

To further these objectives, dual operation of the two programs was authorized in 1971 for situations other than floods, hurricanes and the like.[18] Congress clearly intended that in areas experiencing severe economic hardship, dual operation should be permitted.

In the Seattle-Everett-Tacoma area, the urban centers of the three counties mentioned above, the unemployment rate in the summer of 1971 was 12.4%; in the Seattle-Tacoma area, the rate was 15.7%, highest in the nation for a metropolitan area.[19] By July, 26,650 work-

---

14. 7 U.S.C. § 612c.

15. 7 U.S.C. § 1431.

16. The requirements for such a plan are set forth at 7 C.F.R. § 250.

17. 7 U.S.C. § 2011. *See* Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Schaffer Transportation Co. v. U. S., 355 U.S. 83, 78 S.Ct. 173, 2 L.Ed.

2d 117 (1957); Rockbridge v. Lincoln, 449 F.2d 567 (9th Cir., Sept. 1, 1971).

18. P.L. 91–671 § 3, quoted in text *supra* at note 3.

19. Hunger in Washington, a report prepared by Washington Secretary of State A. Ludlow Kramer, dated July, 1971, at p. 2 (hereinafter, the "Kramer Report"); Seattle: Unemployment, the New Poor,

ers had exhausted all of their unemployment benefits.[20] Large numbers of the poor are finding it impossible to obtain adequate nutrition under the Food Stamp Program because their net incomes are too low to afford food stamps.[21]

The Court finds that the Secretary has acted unlawfully in two respects. First, by establishing a policy against approval of any request for dual operation in any metropolitan area in the United States, a policy which is in obvious conflict with the intent of Congress in enacting the 1971 amendments, the Secretary has exceeded the legal bounds of his authority. Secondly, the refusal of the Secretary to approve the request of the state agency in this case to institute dual operation in King, Pierce, and Snohomish counties was arbitrary and capricious, and an abuse of discretion. Although this area is experiencing exactly the situation contemplated by Congress in enacting the 1971 amendments, the Secretary has arbitrarily determined that he need not or will not consider the state's plan. If dual operation cannot gain approval here, where the unemployment rate is highest in the nation for a metropolitan area, and where thousands have exhausted their unemployment compensation, then the Act has been rendered a nullity.

■ When a state agency, pursuant to 7 U.S.C. § 2013(b), presents a request to administer the Commodity Distribution and Food Stamp Programs in the same area, the Secretary has the duty to consider that request in light of the objectives of the authorizing legislation. Where, as here, the facts clearly indicate that the request concerns an area that qualifies for dual operation by virtue of its severely depressed economy, the Secretary has the duty to approve that request. If, after such a request has been approved, the state presents a plan for distribution of commodities which otherwise satisfies the guidelines established by the regulations,[22] the Secretary must approve the plan.

 The courts may enjoin federal administrative action or inaction when it is violative of legislative enactments.[23] Clearly, relief is warranted in the exceptional circumstances of this case.

Plaintiffs will submit findings of fact, conclusions of law, and decree in conformity herewith.

---

and Hunger, a report prepared by the Select Committee on Nutrition and Human Needs, United States Senate, dated November, 1971, at p. 6 (hereinafter, the "Senate Report.")

20. Kramer Report, p. 3.

21. Kramer Report, pp. 5–6; Senate Report, pp. 11–17.

22. 7 C.F.R. § 250, *et seq.*

23. Citizens to Preserve Overton Park, Inc. v. Volpe, *supra* note 17; Shannon v. U. S., 436 F.2d 809 (3rd Cir. 1970). *Cf.* Rockbridge v. Lincoln, *supra* note 17; Adams v. Witmer, 271 F.2d 29 (9th Cir. 1959).