**SIERRA CLUB, a nonprofit corporation,
Plaintiff,**

**v.**

**DEPARTMENT OF the INTERIOR, an agency of the United States Government, and Rogers C. B. Morton, Individually and as Secretary of the Department of the Interior, et al., Defendants.**

**No. 73 0163 WTS.**

United States District Court,
N. D. California.

May 13, 1974.

John D. Hoffman, Sierra Club Legal Defense Fund, Inc., San Francisco, Cal., for plaintiff.

James R. Browning, U. S. Atty., Paul E. Locke, Deputy U. S. Atty., San Francisco, Cal., for defendants.

SWEIGERT, District Judge.

This is an action by plaintiff, Sierra Club, against the Department of the Interior, and officials of the Department, to obtain judgment of this court directing defendants to use certain of their powers to protect Redwood National Park from damage allegedly caused or threatened by certain logging operations on peripheral privately-owned lands.

The action is now before the court on defendants' motion, based on a record consisting of the amended complaint and exhibits therein) to dismiss the Second Claim of that amended complaint or, alternatively, for summary judgment in their favor.

 The government motion challenges the jurisdiction of this court—a challenge which the court considers so lacking in merit that it need only note that the court clearly has federal question jurisdiction under 28 U.S.C.A. § 1331(a).[1]

As to the standing of plaintiff to maintain this action, the amended complaint contains allegations (First Claim, Par. II; Second Claim, Par. XIII) which seem to conform to the Supreme Court ruling in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). See also, this Court's Memorandum on Motion to Amend Complaint in that case, No. 51464, July 6, 1972. Neither party to the pending action has raised the issue of plaintiff's standing.

We will, therefore, proceed to consider the government contention that the Second Claim of the amended complaint fails to state facts upon which relief can be granted.

This Second Claim of the amended complaint alleges in substance and effect as follows:

That subsequent to the establishment of the Redwood National Park in 1968 plaintiff learned that logging operations on slopes surrounding and upstream from the park were seriously endangering the park's resources, and that these dangers were reported to defendants and were offered in testimony at United States Senate hearings in Washington, D. C., on May 10, 1971;

That on September 24, 1971, plaintiff formally petitioned the Secretary of the Interior to take immediate action pursuant to his authority under the Redwood National Park Act to prevent further harm to the park's resources, and that a task force was then created by the Department of the Interior to make intensive field investigations of the threatened and actual damage to the Redwood National Park and to prepare a report of its findings;[2]

That defendants have taken no action to prevent damage to the park from the consequences of logging on lands surrounding or upstream from the park, except to request the voluntary cooperation of timber companies to reform their operations on minor portions upstream and upslope from the park; that the timber companies have not effectively cooperat-

1. The test for establishing jurisdiction under 28 U.S.C. § 1331(a) is whether the claim would be sustained under a construction of a federal statute. See, Gully v. First National Bank, 299 U.S. 109 at 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936); Gabel v. Hughes Air Corporation, 350 F.Supp. 612 at 614 (C.D.Calif.1972). Plaintiff's second claim involves a construction of federal statutes, the Redwood National Park Act (16 U.S.C. § 79a et seq.) and the National Park System Act (16 U.S.C. § 1) and a determination of the extent of the legal responsibilities imposed by these statutes upon defendants.

2. The amended complaint also alleges that plaintiff was notified by an official of the Department that the report was complete; that plaintiff requested but did not promptly receive a copy of the task force findings; that on January 30, 1973, plaintiff filed this suit originally under the Freedom of Information Act (5 U.S.C. § 552) seeking to obtain a copy of the findings, and that the findings were eventually produced with the apparent exception of one technical report. Plaintiffs, acting upon information thus received, amended its complaint by adding the Second Claim to which defendants' motion is directed.

ed with this request and that defendants manifest no intent to protect the park from further damage to the park's trees, soil, scenery and streams;

That past and present logging operations on privately-owned steep slopes on the periphery of the park leave the park vulnerable to high winds, landslides, mudslides and siltation in the streams which endangers tree roots and aquatic life.

Plaintiff, citing 16 U.S.C. § 1 (hereinafter referred to as the National Park System Act) and 16 U.S.C. § 79a et seq., particularly §§ 79b(a), 79c(e), 79c(d)) (hereinafter referred to as the Redwood National Park Act) contends that defendants have a judicially-enforceable duty to exercise certain powers granted by these provisions to prevent or to mitigate such actual or potential damage to the park and its redwoods as is alleged in the complaint.

Plaintiff contends that such judicial relief can and should be granted under either the Administrative Procedure Act (5 U.S.C. §§ 701–706) which provides in substance and effect that administrative action may be judicially reviewed unless "agency action is committed to agency discretion by law" (5 U.S.C. § 701(a)) and that "the reviewing court shall—compel agency action unlawfully withheld." (5 U.S.C. Sec. 706(1)); or under the Mandamus Act (Title 28 U.S.C. Sec. 1361) which provides that this court has jurisdiction "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The National Park System Act, 16 U.S.C. Sec. 1, provides for the creation of the National Park Service in the Department of the Interior which Service shall:

> promote and regulate the use of Federal areas known as national parks, monuments, and reservations . . . by such means and measures as conform to the fundamental purpose of said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

The responsibilities of the Secretary of the Interior concerning public lands have been stated in Knight v. United Land Association, 142 U.S. 161, 12 S.Ct. 258, 35 L.Ed. 974 (1891) as follows:

> The secretary [of the Department of the Interior] is the guardian of the people of United States over the public lands. The obligations of his oath of office oblige him to see that the law is carried out, and that none of the public domain is wasted or is disposed of to a party not entitled to it. 142 U.S. 161 at 181 (1891). See also, Utah Power & Light v. United States, 243 U.S. 389 at 409, 37 S.Ct. 387, 61 L.Ed. 791 (1916); Davis v. Morton, 469 F.2d 593 at 597 (10th Cir. 1972).

In addition to these general fiduciary obligations of the Secretary of the Interior, the Secretary has been invested with certain specific powers and obligations in connection with the unique situation of the Redwood National Park.

The Redwood National Park was created on October 2, 1968 by the Redwood National Park Act, 16 U.S.C. Secs. 79a–79j,

> to preserve significant examples of the primeval coastal redwood (Sequoia sempervirens) forests and the streams and seashores with which they are associated for purposes of public inspiration, enjoyment, and scientific study . . . . 16 U.S.C. Sec. 79a.

Congress limited the park to an area of 58,000 acres; appropriated 92 million dollars to implement the Act, of which, according to the Second Claim of the Amended Complaint, 20 million dollars remain unspent; and conferred upon the Secretary specific powers expressly designed to prevent damage to the park by logging on peripheral areas.

Title 16 U.S.C. Sec. 79c(e) provides: In order to afford as full protection as is reasonably possible to the timber, soil, and streams within the boundaries of the park, the Secretary is authorized, by any of the means set out in subsection (a) and (c) of this section, to acquire interests in land from, and to enter into contracts and cooperative agreements with, the owners of land on the periphery of the park and on watershed tributary to streams within the park designed to assure that the consequences of forestry management, timbering, land use, and soil conservation practices conducted thereon, or of the lack of such practices, will not adversely affect the timber, soil, and streams within the park as aforesaid.[3, 4]

The question presented is whether on the allegations of the amended complaint, considered in the light of these statutory provisions, this court can direct the Secretary to exercise the powers granted under 16 U.S.C. Secs. 79c(e), 79b(a), 79c(d).

■ Under the Administrative Procedure Act agency action becomes non-reviewable only upon a clear and convincing showing that Congress intended to preclude judicial review. Abbott Laboratories v. Gardner, 387 U.S. 136 at 141, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) quoting Rusk v. Cort, 369 U.S. 367 at 379–380, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S. Ct. 814, 28 L.Ed.2d 136 (1971).

■ The mere fact that the statute is couched in terms of a grant of discretion to the agency does not necessarily indicate an intent to preclude judicial review of the exercise of such discretion; judicial non-reviewability must be determined by an analysis of the entire

---

3. A House Committee Report concerning this subdivision, after explaining that financial limitations prevented inclusion of the entire watershed in the Redwood National Park, states that the Committee:

recognizes, however, that damage may be caused to the margins of every park, however large or small it may be, by acts performed on land outside those boundaries and that the streams within a park, whatever its boundaries, may likewise be damaged if the land on the watershed above them is permitted to erode. The trees along the margin, for instance, may be subject to blowdown if clear cutting occurs right up to the property line, and the streams within the park may be heavily silted if proper soil conservation practices are not maintained upstream. It is for such reasons as these that the Committee wrote into its amendment a new section authorizing the Secretary of the Interior to negotiate agreements with the owners of adjacent lands and of lands on watersheds tributary to the park and if necessary, to acquire interests in their lands which, while allowing selective logging, for instance, to go forward will require the land owner to follow practices that will, as far as possible, protect the trees, soil and streams within the park. H.Rep.No. 1630, 90th Cong.2d Sess., p. 6 (1968).

We also note that Section 79(e) requires the Secretary of the Interior to notify the President of the Senate and the Speaker of the House of Representatives sixty days prior to executing any agreement or contract as to the costs and benefits involved therein. Defendants contend that this section indicates Congressional intent to retain exclusive authority over the Secretary's discretionary powers. We hold that this section which merely requires notice be given to Congress and does not require Congressional ratification of the Secretary's actions, does not support defendants' contention.

4. Title 16 U.S.C. Sec. 79c(d) also provides: The Secretary is further authorized to acquire, as provided in subsection (a) of this section, lands and interests in land bordering both sides of the highway between the present southern boundary of Prairie Creek Redwoods State Park and a point on Redwood Creek near the town of Orick to a depth sufficient to maintain or to restore a screen of trees between the highway and the land behind the screen and the activities conducted thereon.

Title 16 U.S.C. Sec. 79b(a) in addition provides that the Secretary:

may from time to time, with a view to carrying out the purpose of sections 79a–79j of this title and with particular attention to minimizing siltation of the streams, damage to the timber, and assuring the preservation of the scenery within the boundaries of the national park as depicted on said maps, modify said boundaries. . . .

statutory scheme. Rockbridge v. Lincoln, 449 F.2d 567 at 570 (9th Cir. 1971); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1971).

■ Good sense suggests that the existence, nature and extent of potentially damaging conditions on neighboring lands and the effect thereof on the park, and the need for action to prevent such damage are matters that rest, primarily at least, within the judgment of the Secretary. However, neither the terms nor the legislative history of the Redwood National Park Act are such as to preclude judicial review of the Secretary's action or inaction.

In Rockbridge v. Lincoln, 449 F.2d 567 (9th Cir. 1971) our Circuit, considering whether the Secretary of the Interior could be judicially directed to adopt and enforce regulations governing traders doing business on the Navajo Indian Reservation as he was empowered to do by 25 U.S.C. Secs. 261–262, reversed a District Court dismissal of the action and held that, in view of the trust relationship of the Secretary toward the Indians and the specific purpose of the statutes (i. e., a Congressional intent to prevent wide-spread abuses within the unregulated trading post system), such discretion as was vested in the Secretary was not an unbridled discretion to refuse to regulate but only a discretion to decide what specific regulations to promulgate and, therefore, a cause for judicial relief under the Administrative Procedural Act was stated—as well as under the federal question statute, 28 U.S.C. § 1331(a) and the Mandamus Statute 28 U.S.C. § 1361.

Notably, the court stated that ". . . this court can see no valid distinction between the public official who has a statutory duty to act and does not and the one who has a duty not to act and does. This was clearly the view of Congress in enacting the Administrative Procedure Act, since it provides that a reviewing court should 'compel agency action unlawfully withheld' ". 449 F.2d 567 at 573 (1971).

In view of the analogous trust responsibility of the Secretary of the Interior with respect to public lands as stated in Knight v. United Land, *supra,* and the analogous legislative history indicating a specific set of objectives which the provisions of the Redwood National Park Act were designed to accomplish, we consider Rockbridge, *supra,* to be strongly persuasive to the point that a case for judicial relief has been made out by plaintiff.

Similarly, in Citizens to Preserve Overton Park, Inc. v. Volpe, *supra,* the court, considering the propriety of a Secretary of Transportation's authorization of highway construction through a public park under the closely drawn guidelines set by 23 U.S.C. Sec. 138, reversed a District Court dismissal and held that the Secretary's action was subject to judicial review under the Administrative Procedure Act; that any discretion was not to be wide-ranging; that the legislative history indicated that protection of the parkland was to be given paramount importance. See also, Sloan v. United States Department of Agriculture, 335 F.Supp. 816 (W.D. Wash.1971); Archbold v. McLaughlin, 181 F.Supp. 175 at 180 (D.D.C.1960); Allen v. Hickel, 138 U.S.App.D.C. 31, 424 F.2d 944 at 947 (1970).

We are of the opinion that the terms of the statute, especially § 79c(e), authorizing the Secretary "in order to afford as full protection as is reasonably possible to the timber, soil, and streams within the boundaries of the park"—"to acquire interests in land from, and to enter into contracts and cooperative agreements with, the owners of land on the periphery of the park and on the watersheds tributary to streams within the park"—impose a legal duty on the Secretary to utilize the specific powers given to him whenever reasonably necessary for the protection of the park and that

any discretion vested in the Secretary concerning time, place and specifics of the exercise of such powers is subordinate to his paramount legal duty imposed, not only under his trust obligation but by the statute itself, to protect the park.

If anything more than the terms of the statute itself were needed to support this interpretation, such support is to be found in the explicit statement of the Congressional intent and purpose set forth in the legislative history. (footnote 3).

 Although this court has neither the power nor the expertise to substitute its judgment for that of the Secretary (Citizens to Preserve Overton Park, Inc. v. Volpe, *supra*), it does have the power and duty, as stated in *Overton, supra,* to make a finding on whether the Secretary's action or, as in this case, his inaction is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law within the meaning of the Administrative Procedure Act 5 U.S.C. Sec. 706(2)(A). To make this finding the court would consider whether the Secretary's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although the inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one that stops short of substitution of the court's judgment for that of the Secretary.

Plaintiff's Second Claim in his amended complaint does state a claim upon which relief can be granted and this court clearly has jurisdiction over that claim; however, issues of material fact remain outstanding.

Accordingly, defendants' motion to dismiss and defendants' motion for summary judgment should be, and hereby are, denied.